WALTER H. BROWNE, Admr.

*v.*

SIEGEL, COOPER & CO.

*Opinion filed June 19, 1901.*

1. MASTER AND SERVANT—*servant assumes risk of obvious dangers.* A servant assumes not only the ordinary risks of his employment but also all dangers which are obvious, and if he enters into the service, knowing or having the means of knowing its dangers, he is deemed to have assumed the risks and to have waived all claims against the master for damages in case of injury.

2. SAME—*when master is not liable for servant's death.* The owner of a building is not liable for the death of a servant caused by his falling down an open elevator shaft, where, although plaintiff's evidence is sufficient to sustain a finding that defendant was negligent in failing to safeguard the elevator entrance as required by ordinance, yet the same evidence shows not only that deceased assumed the risk, but was guilty of contributory negligence.

3. SAME—*question whether servant assumed risk may become one of law.* Ordinarily, whether a servant has assumed the danger which he encounters or has been guilty of contributory negligence are questions of fact, but they become questions of law when all reasonable minds could draw but one conclusion from the evidence.

4. ELEVATORS—*master's liability respecting elevator shaft and mine shaft is not the same.* A material difference exists between the liability of a master for failure to observe a city ordinance respecting elevator shafts and the statutory liability created by the act "providing for the health and safety of persons employed in coal mines," since the act itself creates a liability for willful violation thereof or willful failure to observe its provisions.

*Browne* v. *Siegel, Cooper & Co.* 90 Ill. App. 49, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. ELBRIDGE HANECY, Judge, presiding.

BENSON LANDON, and B. C. BACHRACH, (WILLIAM S. FORREST, of counsel,) for appellant:

Under the evidence in this case the following questions were for the jury, and it was error not to submit each and all of said questions to the jury:

*First*—Negligence of defendant in failing to comply with the ordinance by guarding the elevator shaft on the second floor with a door that could be opened only from the inside, as required by the ordinance of the city of Chicago.  *Siddall* v. *Jansen,* 168 Ill. 43; *Dallemand* v. *Saalfeldt,* 175 id. 310; *McRickards* v. *Flint,* 21 N. E. Rep. 153; *Carterville Coal Co.* v. *Abbott,* 181 Ill. 495; *Jupiter Mining Co.* v. *Mercer,* 84 Ill. App. 101.

*Second*—Proximate cause in this case was a question of fact for the jury.  *Dallemand* v. *Saalfeldt,* 175 Ill. 310; *Pullman Car Co.* v. *Laack,* 143 id. 244; *Flint* v. *Railway Co.* 59 id. 349; *Railway Co.* v. *Dudgeon,* 184 id. 477; *Swift & Co.* v. *Rutkowski,* 182 id. 18.

*Third*—Contributory negligence.  *Fisher* v. *Cook,* 23 Ill. App. 621; *McRickards* v. *Flint,* 21 N. E. Rep. 153; *Siddall* v. *Jansen,* 168 Ill. 47; *Dallemand* v. *Saalfeldt,* 175 id. 310; *Carterville Coal Co.* v. *Abbott,* 181 id. 495; *Jupiter Mining Co.* v. *Mercer,* 84 Ill. App. 101.

*Fourth*—Assumed risk.  *Illinois Steel Co.* v. *Bauman,* 178 Ill. 355; Shearman & Redfield on Negligence, secs. 216, 217; *Railway Co.* v. *Bailey,* 43 Ill. App. 292; *Railway Co.* v. *Hines,* 132 Ill. 168; *Consolidated Coal Co.* v. *Wombacher,* 134 id. 57; *Whalen* v. *Railway Co.* 16 Ill. App. 320; *Dallemand* v. *Saalfeldt,* 175 Ill. 310.

In *Siddall* v. *Jansen,* 168 Ill. 43, which was a case growing out of an accident through the door of an elevator shaft being not fastened as the ordinance required, this court said:  "The evidence produced by the plaintiff below tends to show there was not on the part of the defendant a compliance with the ordinance.  A peremptory instruction having been given to the jury to find for the defendants, there was consequently no evidence produced by them.  As there was evidence tending to show there was no compliance with the provisions of this ordinance and that plaintiff was rightfully at the place of the injury, it was a question which should have been submitted to the jury."

A willful disregard by the employer of a duty imposed is a willful exposure to liability to injury of the employee, and is an act of negligence of so gross a character and so utterly in disregard of law that the question of contributory negligence, merely, has no place in the case. *Carterville Coal Co.* v. *Abbott,* 181 Ill. 495; *Jupiter Mining Co.* v. *Mercer,* 84 Ill. App. 101.

W. N. WILLIAMS, and O. W. DYNES, for appellee:

Where, at the conclusion of plaintiff's evidence, the trial court finds the same insufficient to sustain any verdict other than one of not guilty, he may direct the jury to return a verdict for the defendant. *Simmons* v. *Railway Co.* 110 Ill. 340; *Patton* v. *Railway Co.* 82 Fed. Rep. 979; *Randall* v. *Railway Co.* 109 U. S. 322; *Duggan* v. *Railway Co.* 42 Ill. App. 536; *Pleasants* v. *Fant,* 22 Wall. 116; *Herbert* v. *Butler,* 97 U. S. 319; *Bowditch* v. *Boston,* 101 id. 16; *Griggs* v. *Huston,* 104 id. 553.

In the case of an employee performing services on the freight elevator of an employer the rule of common carrier liability does not exist. *Bell* v. *Exposition Co.* 76 Ill. App. 591; Webb on Passenger and Freight Elevators, 78, and cases cited; *McDonough* v. *Lanther,* 57 N. W. Rep. 152; *Sievers* v. *Railway Co.* 14 Gray, 466; *Ryan* v. *Railway Co.* 23 Pa. St. 384; *Railway Co.* v. *Salmon,* 11 Kan. 83; *Gillshannon* v. *Railway Co.* 10 Cush. 228.

The master is not required by law to exercise any greater degree of care for the safety of an employee than that employee is required to exercise for his own safety. *Pennsylvania Co.* v. *Lynch,* 90 Ill. 333; *Abend* v. *Furnace Co.* 107 id. 44; *Railway Co.* v. *Flannegan,* 77 id. 365; *Simmons* v. *Railway Co.* 110 id. 340; *Abend* v. *Railway Co.* 111 id. 202.

An employee assumes the risk of performing work under the conditions which he knows to exist, and which by the exercise of ordinary care upon his part he should understand and appreciate the dangers of. *Railway Co.* v. *Driscoll,* 176 Ill. 330; *Pennsylvania Coal Co.* v. *Lynch,* 90

id. 333; Wharton on Negligence, sec. 214; *Clark* v. *Railway Co.* 92 Ill. 43; *Railway Co.* v. *Britz,* 72 id. 261; *Hughs* v. *Railway Co.* 27 Minn. 137; *Camp Point Manf. Co.* v. *Ballou,* 71 Ill. 418; *Simmons* v. *Railway Co.* 110 id. 340; *Ladd* v. *Railway Co.* 119 Mass. 412; *Morey* v. *Coal Co.* 155 Iowa, 671.

Failure of a servant to exercise ordinary care for his own safety is in law considered to be contributory negligence, and bars recovery for injuries which it causes or contributes to cause. *Railway Co.* v. *Hessions,* 150 Ill. 546; *Railroad Co.* v. *Kelley,* 75 Ill. App. 493; *Railway Co.* v. *Fennimore,* 78 id. 479; *Railway Co.* v. *Batson,* 81 id. 142.

Mr. JUSTICE CARTER delivered the opinion of the court:

At the conclusion of the evidence for the plaintiff the circuit court of Cook county, on motion of the defendant, instructed the jury to find the defendant not guilty. The Appellate Court affirmed the judgment rendered on the verdict, and the plaintiff took this his further appeal to this court.

The only question in the case is, did the court err in giving the peremptory instruction.

At the time he was killed Altemar Lavigne was a youth of nineteen years, and was, and had been for the preceding four months, employed by appellee as a porter in its department store in the city of Chicago, and worked with a gang of eleven porters, including himself, whose work and duties were to clean up five floors of the store building in the night time. In doing their work these porters, including Lavigne, used trucks containing sawdust to scatter over the floors, and brushes and brooms for sweeping, scrubbing and cleaning. In order to go from floor to floor, and to carry with them these utensils and material, it was necessary for them to use a freight elevator provided by appellee, and their custom was to take the elevator in the basement and go first to the fifth floor, and when that floor was cleaned to descend in the elevator to the next floor below, and so on until all the

five floors were swept and cleaned. It was the duty of one Bos, who was one of the porters and who worked with them, to run the elevator and to open and close the wire gate at the opening to the elevator door, to permit his co-laborers, as well as himself, to enter and leave the elevator at each floor. The elevator used was the north one of three which ran in elevator shafts on the east side of the building. These shafts were, at the second floor, enclosed in an elevator room, and the entrance to the north elevator was in this room and at the north end or side of the elevator. The accident happened on the second floor, after that floor had been cleaned and while Lavigne and his fellow-laborers were getting ready to take the elevator to descend to the first floor. There was no light in the elevator shaft or in the elevator room, but some gas jets were burning outside, five or six feet from the elevator room, which cast a dim light at the entrance to the elevator, which enabled the men to see through the door, when opened, whether the elevator was there or not, if they were standing within three or four feet of such entrance, but not if further away. The fore-man carried a lantern and furnished one to each porter who would carry it. On the night of the accident, when the second floor had been cleaned, Bos, in performance of the separate duty assigned to him by his employer, went to the wire gate at the opening and found that the elevator was not there. The other parties were coming behind him to descend on the elevator to the next floor. Bos testified that Lavigne, having in his hands his broom and brushes, was standing several feet behind him in the elevator room; that he, Bos, raised the wire gate, which opened by sliding upward, and leaned into the elevator shaft to see where the elevator was, in order to bring it up or down, as might be necessary, and that at that moment he saw a dark body fall into the shaft by his side, and heard the rattling of what proved to be Lavigne's brushes and broom. It appears that as Bos leaned into

the shaft to look for the elevator, Lavigne stepped in and fell to the bottom and was instantly killed. The natural inference from the evidence is that Lavigne supposed the elevator was there, and mistook the motion of Bos in leaning into the shaft as the act of entering the elevator, and as the entrance was of sufficient width he stepped in, carrying in his hands his broom and brushes, and fell to his death.

It was shown by the evidence that other workmen, such as carpenters, painters, and the like, who also were employed by the defendant to perform work in their own line about the building in the night time, often used the same elevator while the porters were engaged in cleaning the rooms; that in so doing they would pull the elevator up or down from the floor where Bos had left it. Bos testified that he would often find that the elevator had been taken up or down from the floor where he had left it, and as he would bring it back he would call out in the shaft and give warning to the other workmen who had taken it away, so they would know that he had brought it back, but that he did not give such warning at the time of the accident; that the warning was not given to or for the benefit of the porters, but only to and for the other workmen who had taken the elevator away. He also testified that Lavigne was generally around there when he would get the elevator, and that if he had been standing where Lavigne was on the night of the accident he could have seen that the elevator was not there. The evidence showed that Lavigne knew that other workmen used the elevator, and that it had frequently happened that when the porters would be ready to descend the elevator would not be where Bos has left it, and that Bos would bring it up or down, as the case might be.

The principal act or omission charged as negligence in the declaration against the defendant was its failure to comply with an ordinance of the city of Chicago, which provided: "All elevator shafts, and all elevator enclos-

ures of every kind, shall have iron doors, which shall be made to open from the inside only, excepting only the door upon the ground floor of the building, which shall also have a lock to permit opening the same from the outside." It was alleged in proper terms that it was necessary for the safety of said Lavigne, while in the performance of his duties, that the elevator shaft or enclosure in which said elevator was used and operated should have had doors made to open from the inside only, and that the defendant neglected this duty and carelessly permitted the shaft or enclosure of this elevator to be without an iron door so made as to open from the inside only, and that by reason of such negligence of the defendant said Lavigne, while so performing his duties and while exercising due care for his own safety, fell into said elevator shaft or enclosure and was killed. It was also alleged that the place where said accident happened was not sufficiently lighted.

The ordinance and the defendant's failure to comply with its provisions were fully proved by the plaintiff, but it also appeared by the same evidence that Lavigne was fully informed of the manner in which the elevator was equipped and used. He knew that the only doors to the elevator and to the elevator shaft were the wire doors, which were opened from the outside by sliding upward. He knew that the other workmen employed about the building often used the same elevator while he and his co-laborers were cleaning the floors, and that often when they would be ready to descend the elevator would not be at the floor where they had left it, but that Bos would have to open the wire gate and pull the elevator up if below or down if above,—so that from the evidence for plaintiff alone it appeared that he had, for several months prior to the accident, knowledge of the dangers to which he and others were exposed by the use of the elevator by others, and by the failure and neglect of the defendant to comply with the ordinance. The evidence adduced by

the plaintiff. was sufficient to sustain a finding that the defendant was guilty of negligence in failing to safeguard the entrance to its elevator as required by the ordinance, but the same evidence proved that Lavigne assumed the danger caused by such neglect of the defendant. He had knowledge that the only bar to the entrance to the elevator shaft was the sliding wire gate, which was opened from the outside instead of from within; that other workmen used the same elevator and would leave it at other floors, and that Bos would often bring it back, as he did on the night in question, when they would be ready to descend to the next floor.

The master's duty requires him to furnish the servant a place ordinarily safe in which to work, and that the machinery, means and appliances which he provides for the service shall be ordinarily safe and free from danger to the servant in their use, and the servant has the right to assume that he has performed this duty. But even if the master fails in such duty, and there are, to the knowledge of the servant, defects in such machinery, means and appliances which render their use hazardous, he is held to have assumed the hazard, for he cannot go on with knowledge of the danger, without complaint, until he is injured and then hold the master liable. The servant assumes not only the ordinary risks incident to his employment, but also all dangers which are obvious and apparent, and if he voluntarily enters into or continues in the service, knowing, or having the means of knowing, its dangers, he is deemed to have assumed the risks and to have waived all claims against the master for damages in case of personal injury. (*Toledo, Wabash and Western Railway Co.* v. *Black*, 88 Ill. 112; Beach on Contributory Negligence,—3d ed.—518.) In the case at bar, the evidence for the plaintiff showed that Lavigne knew of all the conditions which gave rise to the risks or dangers in using the elevator as it was used, and the jury would not have been justified in finding, from the evi-

dence, that he did not know. With this knowledge he not only continued in the service, but at the time of the accident, without waiting for his associates to come into the elevator room who were to descend with him, and without waiting to ascertain whether the elevator was at the opening, or for Bos to get on the elevator first, as he had been accustomed, and without inquiry, he passed Bos, whose attention was absorbed in looking for the elevator, and stepped off into the elevator shaft. We are of the opinion that the jury must have found, from his prior knowledge, not only that he had assumed the danger, but that at the time of the accident he was guilty of such negligence as materially contributed to the injury. We are unable to see how reasonable minds could disagree on this question. Had the issue been submitted to the jury and a verdict returned for the plaintiff, it would have been the duty of the court to set it aside, because the evidence was legally insufficient to establish a liability. There was therefore no error in instructing the jury to find the defendant not guilty.

We cannot agree with counsel that the aspect of the case is materially changed by the absence of sufficient light in the shaft or elevator room to enable Lavigne to see the elevator at the distance he stood from the opening, for the reason that lanterns were provided for all the porters who would carry them, and we cannot say that the defendant was bound to provide stationary or any particular kind of lights.

Counsel for appellant contend that elevator wells or shafts are as dangerous as shafts in mines, and cite *Carterville Coal Co.* v. *Abbott,* 181 Ill. 495, in support of the proposition that where there is a willful violation of a duty imposed by positive law, as by statute or municipal ordinance, for the protection of life or limb, the injury will be deemed willful, and contributory negligence is no defense. However dangerous elevator shafts may be, a material difference exists between the statutory liability

created by the statute of this State "providing for the health and safety of persons employed in coal mines," enacted in obedience to the constitution, and the liability arising from negligence in failing to observe an ordinance concerning elevators and elevator shafts, designed to guard against dangers arising from their use. The statute referred to, itself creates a liability for any injury to person or property occasioned by any willful violation of it or any willful failure to comply with its provisions. (Hurd's Stat. 1897, chap. 93, sec. 14, p. 1091.) For any willful injury, the lack of ordinary care or contributory negligence on the part of the one injured is no defense. But the case at bar is not of such a character, neither by its allegations nor its proof. Ordinarily, of course, the question whether the servant has assumed the danger which he encounters, or has been guilty of contributory negligence, is one of fact, but, as in other cases, the question will become one of law when but one conclusion can be drawn from the evidence by all reasonable minds.

We do not regard anything said in the cases cited (*Pullman Palace Car Co.* v. *Laack*, 143 Ill. 242, *Dallemand* v. *Saalfeldt*, 175 id. 310, *Fent* v. *Toledo, Peoria and Warsaw Railway Co.* 59 id. 349, *Swift & Co.* v. *Rutkowski*, 182 id. 18, and *North Chicago Street Railroad Co.* v. *Dudgeon*, 184 id. 477,) as in conflict with the holding in the case at bar. Whether injuries which occur because of the violation by the master of municipal regulations enacted for the preservation of life or limb should be regarded as willful and not subject to the defense of contributory negligence, or to the defense of the implied assumption by the servant of the risks and dangers caused by such violation, is a question of public policy for the legislature, and not one for the courts. We can only apply the law as it is.

Finding no error in the record the judgment must be affirmed.                                    *Judgment affirmed.*