## American Rolling Mill Corporation v. Cyrus Knox.
### Gen. No. 13,824.

1. MASTER AND SERVANT—*what failure to furnish safe place to work.* It is negligence for a master to change the condition of the floor of an engine room in which the servant is working by removing some of the planks across a pit contained therein without warning such servant of the change.

2. MASTER AND SERVANT—*what not an assumed risk.* A servant does not assume the peril which arises from the uncovering by the master, without warning to him, of a pit contained in an engine room in which he is working.

3. INSTRUCTIONS—*when may ignore doctrine of assumed risk.* An instruction may with propriety ignore the doctrine of assumed risk where that question does not arise in the case.

FREEMAN, J., dissenting.

Action in case for personal injuries. Appeal from the Circuit Court of Cook county; the Hon. ARTHUR H. FROST, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1907. Affirmed. Opinion filed March 6, 1908. Rehearing denied March 20, 1908, and opinion modified and refiled.

**Statement by the Court.** Cyrus Knox, appellee, recovered a judgment in the Circuit Court against appellant for $2,700 damages for personal injuries.

Knox was night foreman for appellant, having charge of anything in appellant's plant, consisting of a muck mill, an open hearth steel plant, two finishing mills and a gas house, all under one roof. He had been in the employ of appellant in that capacity for about six weeks before the accident in which he was injured. He went to work through the working days of the week at about six o'clock in the evening, and on Sundays at any time between eight and ten o'clock in the evening. The plant ran day and night. With the exception of the steel plant, the whole plant was shut down Saturday nights. Appellee left the plant between six and seven o'clock Saturday mornings and did not go back to it until Sunday nights, and had no

knowledge of what was going on in the plant in those intervals except as he was notified. On the Sunday night when he was injured, July 28, 1902, he went to work about eight o'clock in the evening. He had two or three men at work helping him to clean up and get things in readiness to start up the plant on Monday morning. About twelve o'clock the men went to lunch, and after they returned from lunch they were to go over to what was called the nine-inch mill and couple it up ready for the Monday morning.

The evidence tends to show that the furnace room and the engine room were separated by a wall about three feet high. They were in the center of the building. The engine room was between the furnace room and the nine-inch mill. The floor of the engine room was lower than the floor of the furnace room, and two or three steps led down to the engine room from the furnace room, nearly in front of two engines located there. In the engine room is a long pit in which ran a large fly-wheel and a large pulley wheel. The axles of these wheels were a little above the floor. A belt ran over the large pulley wheel and came back over a small pulley wheel. Between the rim of the fly-wheel and the small pulley wheel there was a distance of about twenty feet; there was a space of seven or eight feet in height from the level of the floor up to the belt. The pit at this point was usually covered over with twenty or more planks to enable persons to walk across it under the belt. These planks were loose planks and never taken up except for the purpose of repairing the wheels or for babbitting, which could only be done when the engine was not running.

Three of the planks across the pit were removed between Saturday morning, when appellee left the plant, and Sunday evening, when he returned, according to the testimony for appellee, and without his knowledge. According to the testimony for appellant, the mills had been shut down and the planks had been

removed two or three days before the night in question.

After appellee told the men to get their lunch, he sat down for a time near the furnaces where it was warm, and then started to go to the nine-inch mill, where his men were working. He went down the steps into the engine room and went in a north-westerly direction in order to cross the pit on the planks, and stepped into the pit where the planks had been removed, and was injured.

The evidence tends to show that the place was in a semi-dark condition, there being some light from the furnace room, and a light from a torch at the nine-inch mill, twenty or twenty-five feet away, and from a torch still nearer.

F. J. Canty, J. C. M. Clow, and E. E. Gray, for appellant; H. E. Long, of counsel.

Darrow, Masters & Wilson, for appellee.

Mr. Justice Smith delivered the opinion of the court.

The two principal questions of fact presented are as to the negligence of appellant and of appellee. In our opinion, the evidence shows negligence on the part of appellant. To change the condition of the floor by removing some of the planks across the pit without warning appellee of such change may reasonably be considered negligence, and the evidence shown by the record warranted the jury, we think, in finding appellant guilty of negligence. The planks were removed in the daytime, in the absence of appellee from the plant. Appellee, as night foreman of the whole plant, might reasonably be expected to pass over these planks in going from one part of the plant to another. He was foreman of all the men and had charge of the mill nights. As Tanner, called by appellee, says in his testimony: "Knox was foreman over the rolling mills. He was not confined to any particular part of the build-

ing, but was here and there.'' He went on duty after it was dark. He had been employed at the plant about six weeks, and the planks across the pit had never been removed during that time. He had frequently passed over this point in the night time under similar conditions and had been lulled into a sense of safety and security in passing along this usual and customary route. He had a right to presume that appellant would let him know in some way if any unusual dangers or increased hazards had been created in the plant in his absence. It was the duty of appellant in the exercise of ordinary care for the safety of its employe, to warn him of any changes which increased the peril or danger of his employment, and of which he could not reasonably be presumed to be aware from the time and nature of his employment, so that he might guard himself against the new hazard. The evidence in the record amply justifies the conclusion that no warning was given, and, in our opinion, it warrants the finding that appellant was negligent. Iroquois Furnace Co. v. McCrea, 191 Ill. 340, affirming 91 Ill. App. 337; National Syrup Co. v. Carlson, 155 Ill. 210; Deering v. Barzak, 227 Ill. 71.

We come now to the consideration of the negligence of appellee contributing to the injury. It is urged on behalf of appellant that if the place was so dark that appellee could not see the hole into which he fell, he was negligent in attempting to go through the mill in its then dark condition without carrying a torch, when he knew that repairs were liable to be made between the time he left the mill on Saturday morning and the time of his return Sunday night. We are not prepared to hold, however, that the facts that it was dark and his knowledge that repairs were usually made on Saturdays and Sundays constituted negligence on his part. That was a question for the jury to determine upon a consideration of all the facts and circumstances in evidence. So, also, it was a question for the jury, upon the evidence, whether this hole of about three

feet by four feet was at that time clearly open and obvious to the sight, and that appellee knew it was there; and either to harmonize the conflicting testimony of McGruther and Knox upon the latter's knowledge of the existence of the hole, or to determine which witness told the truth. We cannot hold that the verdict of the jury finding in effect that appellee was free from negligence is against the manifest weight of the evidence.

The court gave, at the request of appellee, the following instruction:

"In this case, if you believe from a preponderance of the evidence that the defendant was guilty of the negligence charged in the declaration and that such negligence, if any, was the proximate cause of the plaintiff's injuries, if any, then you may find the defendant guilty, provided you further believe from a preponderance of the evidence that the plaintiff at the the time of the injury was in the exercise of reasonable care for his own safety."

The principal objection urged to this instruction is that it eliminates from the case and takes from the jury the question of assumed risk.

In our opinion there is no question of assumed risk in this case. The true rule is stated in McCormick H. M. Co. v. Zakzewski, 220 Ill. 522, as follows: "The servant assumes, not only the ordinary risks incident to his employment, but also all dangers which are obvious and apparent, and if he voluntarily enters into or continues in the service, knowing, or having the means of knowing, its dangers, he is deemed to have assumed the risks and to have waived all claims against the master for damages in case of personal injury resulting from such dangers. Browne v. Siegel, Cooper & Co., 191 Ill. 226; Cichowicz v. International Packing Co., 206 *id.* 346." It is obvious from the evidence that the uncovered pit in the condition in which it was on the night of the accident, was not one of the ordinary risks of appellee's employment. The planks across the

pit had never been removed during the six weeks of his employment by appellant. Nor was the removal of the planks, leaving the pit uncovered, obvious and apparent to appellee; for, according to the averments of both counts in the declaration and the undisputed evidence in the record, appellee was unaware of and could not have known, in the exercise of all due care for his own safety, of the removal of the planks which constituted the usual pathway over the pit. By the removal of the planks appellant created a new danger, unknown to appellee, the risk of which appellee did not assume.

We do not think there are reversible errors in the other instructions given at the request of appellee.

On the direct examination appellee was asked several questions, and testified as to his former occupation, that of puddler, and the wages he received and which were paid generally to puddlers. This testimony was objected to by appellant. We think the evidence was competent, and the court did not err in admitting it.

The amount of the verdict is not large, in view of all the evidence, and we cannot say it is excessive. The judgment is affirmed.

*Affirmed.*

Mr. Justice FREEMAN dissenting.