John Pozlep, Defendant in Error, v. Crane Company, Plaintiff in Error.

Gen. No. 15,715.

MASTER AND SERVANT—*when latter cannot recover for failure to furnish safe place.* A servant cannot recover for an injury suffered by him in the course of his employment from the failure of his employer to furnish him a safe place to work, where the defective condition was open and obvious so that it was known or ought to have been known to the servant.

Action in case for personal injuries. Error to the Superior Court of Cook county; the Hon. BEN M. SMITH, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1909. Reversed with finding of fact. Opinion filed May 5, 1911.

ALDEN, LATHAM & YOUNG, for plaintiff in error.

COBURN & CASE and FRED W. BENTLEY, for defend- ant in error.

MR. PRESIDING JUSTICE SMITH delivered the opinion of the court.

An action was brought by John Pozlep, defendant in error, against the Crane Company, plaintiff in error, in the Superior Court to recover for personal injuries

Pozlep v. Crane Co., 161 Ill. App. 422.

alleged to have been received by him on November 15, 1906, while he was in the employ of the Crane Company. The original declaration consisted of one count, and was filed on July 1, 1907. In April, 1908, two additional counts were filed. On the trial, the court sustained motions of the defendant below to instruct the jury that the plaintiff could not recover under either the original declaration or the second additional count.

The first additional count alleges that the defendant in error (hereinafter called the plaintiff) was in the employ of the defendant, and in the course of his employment, it was his duty to wheel scrap iron in a wheelbarrow from a point in the defendant's plant over and upon planks or a passageway which extended over the roofs of certain sheds, to certain bins, where the plaintiff was to dump the scrap iron; that the defendant negligently permitted the planks which were lying upon the roof of a shed or bin to remain in a loose and unfastened condition and furnished no support underneath said roof, and negligently removed and took away from underneath said roof, the supports which prior to the day on which the plaintiff was injured, had been underneath the said roof, so that said planks and said roof were insufficiently supported and unfit to hold the load which the plaintiff was then and there wheeling over the same, and was shaky and teetering, which said condition of the roof was not known to the plaintiff, and that while the plaintiff was in the exercise of due care for his own safety, by reason of the shaking and teetering of said planks and roof, he was thrown off from the same into a certain hole in said roof directly adjacent to and adjoining said planks, whereby he was severely injured.

It appears from the evidence that the defendant operated a pipe mill at Rockwell and Fifteenth streets, in the city of Chicago, and that certain railroad tracks ran north and south adjoining the eastern boundary of the property. The sheds extended north and south,

and were about sixteen feet west of and parallel with the railroad tracks. The roof of each shed was sixteen feet from the gable or ridge to the eaves, and had a slight pitch, being two feet higher at the ridge than at the eaves. The space between the easterly shed and the railroad tracks was divided off into bins into which scrap iron was dumped. There were five of these bins and they were made by nailing two-inch planks to posts which were set sixteen feet east of the east side of the easterly shed. The easterly side of the shed in this way constituted the west end of the bin. The width of the bins differed to some extent. A plank passageway extended from a platform along the north side of the main pipe mill to the roof of the west shed. From that place where planks rested on the roof the passageway extended over the roofs of the two sheds in a northeasterly direction. Near the eastern edge of the east shed, two three-inch planks extended out upon the bins. These planks were the end of the passageway, and from them wheelbarrow loads of scrap iron, which was wheeled out from the pipe mill and over and along the passageway above described, were emptied into the bins below. These planks rested on the roof from three to five feet from the eaves, and extended out diagonally over the bins and rested on one of the partitions running east and west that divided the space between the east shed and the railroad tracks into bins. They also rested on a support that was built up at the point where the planks extended over the eaves and they were nailed at each of these three points. Where the planks rested on the roof two boards were placed to lessen the jar when the wheelbarrows were wheeled from the roof onto the planks.

It was a part of the duty of the plaintiff and other employes to gather up scrap iron that accumulated in the pipe mill, and to wheel the same in wheelbarrows from the pipe mill over the passageway above described and empty the same in the bins. The plaintiff

had been engaged in this work for a period of from four to six months prior to the date on which he was injured, and had occasion to go over the passageway in question a number of times every day.

The accident occurred about nine-thirty o'clock in the morning. Plaintiff claimed that the last time he had been over the passageway prior to his injury was about eleven o'clock on the day previous, and that the passageway was solid and firm on all occasions when he had been over it prior to the day he was injured, but that at the time of the injury it was insecure, and was teetering and shaky. The plaintiff's testimony is that after he was on the planks and was about to empty his load of scrap iron into one of the bins he was thrown to the ground in an open space where there was no roof near the passageway or planks, because of the shaking and teetering condition of the roof, and thereby injured.

The plaintiff and his witnesses claimed that large quantities of coal had been stored in the east shed under that part of the roof over which the passageway extended, and that prior to the time the plaintiff was injured and after eleven o'clock of the day before, this coal which it was alleged formed a support to the roof, was removed. The evidence, however, on behalf of the defendant, shows that the shed in question had been constructed about a year before the accident. The manner of the construction, the dimensions of the uprights, stringers and rafters, were all proven. The plaintiff himself testified that the roof was solid prior to the time he was injured; "that nothing broke at the time I fell but the planks went loose and tipped me right over and threw me into the hole. When the roof was shaking and the planks went up and down, I fell."

Nine witnesses for the defendant testified that it was solid before the accident and that it was also just as solid after the accident. One workman who saw the

accident immediately walked over the planks from which the plaintiff fell and he testified that they were solid and firm. Another workman had just passed over the same planks and passageway and in returning, after dumping his load, he passed the plaintiff just as the plaintiff was coming out wheeling the load with which he fell. This workman as well as several others testified that the roof over which the passageway extended was firm immediately after Pozlep came over it; that there was no change of any kind in the supports thereto; that the roof was as solid immediately after the accident as it had been before, and that the defendant continued to use the passageway without any change as to the supports to the roof, for several months after the plaintiff's injury.

Numerous errors are assigned on the record and urged in argument as grounds for a reversal of the judgment. We do not deem it necessary to discuss or refer to the grounds of reversal based upon such alleged errors for the reason that in our opinion the evidence on the part of the plaintiff is unbelievable, and affords no basis for the recovery which was had in this case in view of all the evidence. We think that the evidence shows that the plaintiff started out over the passageway, with a wheelbarrow load of scrap iron, and proceeded over the roofs of the sheds and upon the planks that extended from the east shed over the bins, when his wheelbarrow, through carelessness on his part, ran off the north side of the planks, and that the plaintiff, in attempting to hold back the wheelbarrow and keep it from falling, was himself drawn over with the wheelbarrow and fell to the ground, sustaining the injuries which he suffered.

In our opinion, the theory of the plaintiff's case, as shown by his evidence, is that the passageway and planks, up to the day of the accident, were firm and safe and well supported, but that by removing coal from underneath the roof of the sheds, the support of the roof was taken away, causing the planks to teeter

and wabble, so that the plaintiff was thrown off of the planks.

We are unable to believe, and we do not think the jury were warranted in believing that the gable or ridge of the roof, or any part of the roof on which the planks rested, was supported by the coal which had been stored underneath, or that the supports of the passageway were in any way weakened by the removal of the coal from underneath the roof.

The theory that the gable of the roof or the ridge of the roof, or any part of the roof of the shed upon which the planks rested was supported by coal stored in the shed, seems to us too unreasonable to be believed in view of the evidence in the case, which showed that it was otherwise firmly supported, and also in view of the fact proved by a great preponderance of the evidence that the planks and the passageway were as firm at the time of the accident as they had been for the six months previous thereto.  We think the evidence shows that there was no change in the condition of the passageway and planks caused by the removal of the coal or coke from the shed.

It is clear from the evidence that the plaintiff knew the condition of this walk or passageway which he was required to use, as well if not better, than the defendant, and it is well settled that a servant cannot recover for an injury suffered by him in the course of his employment from the failure of his employer to furnish him a safe place to work, where the defective condition was open and obvious so that it was known or ought to have been known to the servant.  Browne v. Siegel Cooper & Company, 191 Ill. 226; East St. Louis Ice & Cold Storage Co. v. Crow, 155 Ill. 74; Kaare v. T. S. & I. Co., 139 N. Y. 369.

The theory of the plaintiff's case narrows the issue on the question of fact to negligence on the part of the defendant in weakening the supports of the east half of the roof of the east shed over which the passageway extended, by removing the coal from the shed so

that it would not reach the roof, and that thereby the supports to the planks above were rendered insecure and weak. This, we think, is conclusively negatived and proven untrue by the uncontradicted testimony in the case as to the manner in which the shed was constructed.

The plaintiff in his testimony on direct examination did not mention the subject of the removal of coal. On his cross-examination he testified that he never went under the sheds himself at all, and that he did not know when they took the coal out of the shed. He says it was not his business to know.

The witness Stephens stated that the shed was filled with coal and coke about five months before the accident, and that the coal was filled in the shed up to the roof; that they dumped the coal in from the top of the roof, and filled it up as far as they could fill it; that the roof was supported by the coal, and that as long as the coal remained in the shed the roof was solid; that the coal was taken out nights to "fill the boilers," but the witness was unable to say when the coal was taken out of the shed; that when he went there the next day after he heard the plaintiff was hurt there was a little coal left, the pile being not more than three feet from the floor. This witness was a discharged employe, and as appeared from his cross-examination, had been arrested and in jail for several months; had not lived with his family for eight years, and had been one of the principal witnesses in another damage suit against the defendant. He admitted that in the spring of the year 1908, he had a conversation with Mr. Koester, the superintendent of the Crane Company's plant, in which he proposed that if Koester would give him a job he would not testify as a witness in the two cases in which the Crane Company was defendant and the plaintiffs wanted him as a witness. An examination of the testimony of this witness shows, we think, that in his mind the roof of the shed

was not so much weakened by the removal of the coal as from some other causes. He claimed that the planks were both too long and had no bearing underneath, and swayed up and down, and in reply to a question by the court: "Where do you understand you are to describe the condition of the planks, what place?" the witness answered: "It was laid over a hole and everything under it was bare, nothing under to hold, and he had to go over that place to dump the scrap iron." In another part of his testimony he says that the "plank always swayed up and down when he walked over it because there was no support in the middle of the plank. The roof was all right at the point where the plank rested on the roof, that part was all right, but as soon as he got off the roof then it had no bearing at all, and then it wabbled." This indicates very clearly that the wabbling of the plank which the witness had in mind and testified to was due to a lack of support in the middle of the plank, one end of which was resting on the roof, and not due to any weakness in the roof itself for lack of support, as averred in the declaration. The testimony of this witness does not support the declaration.

The only other witness for the plaintiff was Anton McLane, who testified that he knew what was under the roof upon which the plank runway was laid before the day that the plaintiff got hurt and up to that day, and that there was coal and coke there. He testified that after plaintiff was injured the witness went into the shed and that there was coal around in the corners of the shed, and that the top of the roof was about nine feet high. On cross-examination he says, that he didn't have any occasion to go inside the sheds and never went into them; he did not know when they commenced taking coal from the sheds, and that they had been taking coal out of the sheds for two days, but could not tell when they started to remove the

coal; that he first looked under the shed on which the passageway was constructed after the accident, never before.

This evidence, standing by itself, we regard as exceedingly unsatisfactory, in that it does not show the negligence on the part of the defendant averred in the declaration, and fails to show that any considerable or unusual amount of coal was taken from the shed between the time the plaintiff went over the passageway on the day prior to the accident and the time he was injured, and it fails to show that the removal of the coal in any way weakened the planks of the passageway or interfered with their support or the support of the roof.

The judgment is therefore reversed with a finding of fact.

*Reversed with finding of fact.*