# Patrick Cox, Appellant, v. Illinois Tunnel Company, Appellee.

## Gen. No. 16,008.

MASTER AND SERVANT—*when doctrine of assumed risk bars recovery.*
If the servant knows cog wheels are not guarded and goes to work
and continues at his work for the period of three weeks with full
knowledge of such facts, there is such an assumption of risk as will bar
a recovery for a resulting injury.

Action in case for personal injuries. Appeal from the Superior Court
of Cook county; the HON. HOMER ABBOTT, Judge, presiding. Heard
in the Branch Appellate Court at the October term, 1909. Affirmed.
Opinion filed December 22, 1911.

E. J. DABRAGH, G. W. SPUNNER and H. N. BELL, for
appellant.

J. A. BLOOMINGSTON, for appellee.

MR. JUSTICE SMITH delivered the opinion of the
court.

An action on the case was brought by Patrick Cox,
an employe of the Illinois Tunnel Company, against
the company, appellee, for negligence in failing to
provide a safe place in which to work.

The plaintiff at the time of his injury was attending
pumps in the subway of the defendant, the Illinois
Tunnel Company, used for the purpose of removing
from the tunnel the seep water accumulating therein.
This tunnel is a bore about 50 feet under the streets
of Chicago 7 feet high and 10 feet wide. The pumps
are located in alcoves in the side of the tunnel about
the same size and shape as the tunnel, extending back
at right angles with the tunnel about 12 feet.

Connected with the pump was a pair of cog-wheels
about 2 1-2 feet from the floor. One of these cog-

wheels was large and the other was small. The large one was turned by the smaller one. They turned together and meshed toward each other when in motion. They were located on the side of the pump where the plaintiff had to pass in going to and from the bleeder in the rear of the pump. Between the pump and the cog-wheels on the one side and the side of the pump room on the other there was a passage about 2 1-2 feet wide which, at the elevation of a man's head, was narrowed by the oval shape of the ceiling, so as to cause a man in passing along to incline his head toward the pump. The plaintiff's duties at each pump were the same, consisting of the performance of the same acts each time in the same way and manner, and at the time of the injury those acts were being done in the same manner as directed by the defendant's representative, three weeks prior to the injury, when the plaintiff began his duties in the tunnel. Plaintiff's duties consisted in entering the pump room at the front, starting the pump, which was run by electricity, passing by the cog-wheels to the rear of the machine, regulating the bleeder, passing out by the cog-wheels to the door of the pump-room and thence along the tunnel about a block to the sump-hole where the water collected. When the water was removed, plaintiff went back to the pump room and stopped the pump. At the time the plaintiff was shown how to perform these duties, no danger was pointed out to him, nor any warning or caution given him. The tunnel was dark, except at the pump room, where at the entrance was a light which at the time and place of the injury was dim. There was not sufficient room in the tunnel to pass a moving car. When a car was encountered it had to be flagged down and climbed over or around. In passing from the pump room to the sump-hole along the tunnel moving cars had to be constantly expected and looked out for.

The plaintiff attended seven pumps, made two rounds to all of them each shift, covering about four miles each round, except the pump at which he was injured, to which he made three rounds. When he had been engaged at this work about three weeks, he was injured at the Randolph river drift pump by having his arm caught in and crushed almost to the elbow between the cog-wheels. At the time of his injury the plaintiff had started the pump, passed to the rear thereof, manipulated the bleeder and was passing out between the machinery and the side of the room to listen for a passing motor preparatory to going to the sump-hole a block away, when he stepped on something round on the floor of the pump room, which together with the fact of being on a strain in bending his head from the oval ceiling toward the machinery, caused him to lose his balance and fall against the cog-wheels, which caught his hand, pulled his arm in to the elbow thus causing the injury.

The declaration contains four counts, each of which alleges the injury to have been caused by the negligence of the defendant in failing to provide a safe place for the plaintiff to work. The first count avers negligence in maintaining a wet, slippery and dirty floor in the pump room where the plaintiff had to work. The negligence averred in the second count is that the machinery was situated so as to cause the cog-wheels to revolve in from the side where the plaintiff had to pass instead of the reverse. The negligence averred in the third count is that the place was dangerous, because of a failure to protect or cover the cog-wheels. That averred in the fourth is a failure to cover or guard the cog-wheels, and it pleads an ordinance of the city of Chicago requiring such machinery to be guarded.

The plaintiff testified in his own behalf and was the only witness at the trial. It appears from the plaintiff's evidence that he was familiar with the place

of his injury and the location and management of the cog-wheels, which were entirely unprotected. He says that at the Randolph river drift pump there would be boards on the floor at times when the other pump men would put boards there to walk on so their feet would be dry. At the big sump-hole the water would rise and come out. He did not pay much attention to its condition at the time of the injury, and could not say whether there were boards or there was water on the floor at that time. He testifies, "There was some loose water out by the sump-hole, so I had to be careful for fear I would slip." He says that he did not notice any water in the passageway and does not think there was any there. He does not remember what condition the floor of the pump room was in at the time of the injury. He says sometimes it was wet, but he does not think it was wet at that time.

The plaintiff testified that he stepped upon something round, he did not know whether it was a stone, because he did not look to see; and when asked if it might have been the pipe that was in the passageway he could not say. He only guessed that it was a stone, because it felt round.

The evidence is substantially to the effect that the plaintiff knew all about the place, and if it was a stone that he stepped upon, he knew about the stone. He was in charge of the room and of the pump, and there is no evidence to the effect that the defendant knew or should have known anything about it if it was a stone. There is no evidence that any one outside of the plaintiff went into this room other than the man who took the other shift. If there were stones on the floor, and the plaintiff says there were some before the accident, he knew of them and assumed the risk of stepping upon them and falling by reason of their presence. He was familiar with the machinery, knew how it operated, and appreciated the danger, according to his evidence, of being caught within the cogs

of the wheels. He knew that if he got his hands or body in them he would be seriously injured.

The question presented by the case, as made by the evidence of the plaintiff, is whether or not the plaintiff assumed the risk of his employment. The plaintiff knew that the cog-wheels were not guarded and went to work and continued at his work for three weeks with full and complete knowledge of this fact. This constitutes in law an assumption of the risk so far as the failure to comply with the city ordinance is concerned. Browne v. Siegel-Cooper & Co., 191 Ill. 226.

The above case is one often cited, and the facts and the holding of the court are well known to the profession and need not be stated here. In our opinion, it covers the case at bar completely, and controls it upon the general question of the assumption of risk, and upon the question of the assumption of risk where an ordinance is being violated by an employer.

The court below at the close of the plaintiff's evidence instructed the jury to find the defendant not guilty and a verdict was rendered in accordance with the instruction, and judgment was entered thereon.

The judgment of the Superior Court is affirmed.

*Affirmed.*

MR. PRESIDING JUSTICE BALDWIN took no part in the decision of this case.