WILLIAM J. KENNEDY, Respondent, *v.* JOHN J. FRIEDERICH et al., Appellants.

NEGLIGENCE — FALLING INTO TEMPORARY ELEVATOR SHAFT — CONTRIBUTORY NEGLIGENCE.    One who, having formerly been employed in a building in process of construction, enters therein after dark or in the twilight for the purpose of getting his pay, while the building is in an unfinished condition, having a temporary floor of planks over the basement and a temporary elevator, the location of which he knows and which to his knowledge is in almost constant use and liable to be moved from the ground floor to other places in the shaft, leaving the hole therein open, and who, passing across the elevator platform, which at the time is on a level with the ground floor, proceeds to the office and after receiving his pay returns through the building and walks into the elevator shaft, the elevator having been in the meantime moved, and falling to the basement receives injuries, is guilty of contributory negligence, since he has no right to assume that the elevator is resting on the ground floor and that he can cross in safety.

*Kennedy* v. *Friederich*, 45 App. Div. 631, reversed.

(Argued October 25, 1901; decided November 1, 1901.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered December 4, 1899, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*William Nottingham* for appellants. The plaintiff took upon himself the risk in undertaking to pass over the elevator when he might have walked along the passage beside it or taken another route by the northwest gate, unattended with any danger. (*Haven* v. *Bridge Company*, 151 Penn. St. 620; *Sharpsteen* v. *L. S. & M. Co.*, 3 App. Div. 144; *Kaare* v. *T. S. & I. Co.*, 139 N. Y. 369; *Dubois* v. *City of Kingston*, 102 N. Y. 219; *Dieboldt* v. *U. S. B. Co.*, 81 Hun, 195; *Van Orden* v. *Acken*, 28 App. Div. 160; *McDugan* v. *N. Y. C. & H. R. R. R. Co.*, 10 Misc. Rep. 336; *Reiser* v. *N. Y. & H. R. R. Co.*, 24 App. Div. 23; *Burk* v. *E. G. E. Co.*, 89 Hun, 498.) The plaintiff was guilty, as a matter of law, of contributory negligence. The evidence fails to show the exercise of that ordinary caution upon his part which the circumstances of the case demanded from a prudent person. (*Wilkinson* v. *Fairrie*, 1 H. & C. 633; *McGraw* v. *F. & T. L. Co.*, 4 Am. Neg. Rep. 6; *Splittorf* v. *State*, 108 N. Y. 205; *Taylor* v. *Carew*, 140 Mass. 150; *Brenstein* v. *Mattson*, 10 Daly, 336; *O'Dwyer* v. *O'Brien*, 13 App. Div. 570; *Fogassi* v. *N. Y. C. & H. R. R. R. Co.*, 17 App. Div. 286; *Sickles* v. *N. J. Ice Co.*, 153 N. Y. 83; *Morrison* v. *Commissioners*, 116 Ind. 431; *Toogood* v. *Mayor, etc.*, 12 Daly, 220.) The plaintiff was a mere licensee upon these premises, and the defendants owed him no duty that was not fully discharged. (*Victory* v. *Baker*, 67 N. Y. 366; *Larmore* v. *C. P. Iron Co.*, 101 N. Y. 391; *Plummer* v. *Dill*, 156 Mass. 426; *Burchell* v. *Hickisson*, 50 L. J. [N. S.] 101; *Splittorf* v. *State*, 108 N. Y. 205; *Sterger* v. *Van Sicklen*, 132 N. Y. 499; *Cusick* v. *Adams*, 115 N. Y. 55; Beach on Cont. Neg. § 50; *Sullivan* v. *Waters*, 14 Irish Com. Law Rep. 460; *Flannigan* v. *Am. Glucose Co.*, 11 N. Y. Supp. 688; *Castoriano* v. *Miller*, 15 Misc. Rep. 254.) Even were the plaintiff more than a mere licensee the defendants were only bound to protect him from hidden traps and pitfalls. (*Carleton* v. *Iron Co.*, 99 Mass. 216; *Larmore* v. *C. P. Iron Co.*, 101 N. Y. 391; *Beck* v. *Carter*, 68 N. Y. 283.) There was no negligence on the part of the defendants in failing to guard the elevator hole in

question. (*Murphy* v. *Altman*, 28 App. Div. 472; *Van Orden* v. *Acken*, 28 App. Div. 160.)

*M. E. Driscoll* for respondent. Defendants were guilty of carelessness which caused the accident. (*Fogarty* v. *Bogart*, 43 App. Div. 430; *Quirk* v. *Siegel-Cooper Co.*, 43 App. Div. 464; *McRickard* v. *Flint*, 114 N. Y. 222; *Beck* v. *Carter*, 68 N. Y. 283; *Ackert* v. *Lansing*, 59 N. Y. 646; *Flynn* v. *Central R. R. Co.*, 142 N. Y. 439; *Sunderlin* v. *Hollister*, 4 App. Div. 478; *Swords* v. *Edgar*, 59 N. Y. 28; *Newall* v. *Bartlett*, 114 N. Y. 399; *Porcella* v. *M. R. F. L. Assn.*, 50 App. Div. 158.) The plaintiff was not guilty of contributory negligence. (*Eastland* v. *Clarke*, 165 N. Y. 420; *Brown* v. *Wittner*, 43 App. Div. 135; *Sunderlin* v. *Hollister*, 4 App. Div. 478; *Weber* v. *N. Y. C. & H. R. R. R. Co.*, 58 N. Y. 455; *Greany* v. *L. I. R. R. Co.*, 101 N. Y. 423; *Kenney* v. *Rhinelander*, 28 App. Div. 246; *Wilcox* v. *N. Y., L. E. & W. R. R. Co.*, 88 Hun, 263; *Weiss* v. *Jenkins*, 39 App. Div. 567; *Fogarty* v. *Bogart*, 43 App. Div. 430.) Plaintiff was not a mere licensee. (*Plummer* v. *Dill*, 156 Mass. 426; *Victory* v. *Baker*, 67 N. Y. 366; *Splittorf* v. *State*, 108 N. Y. 205; *Sterger* v. *Van Sicklen*, 132 N. Y. 499; *Cusick* v. *Adams*, 115 N. Y. 55; *Speckman* v. *Boehm*, 36 App. Div. 262; *Castoriano* v. *Miller*, 15 Misc. Rep. 254.)

HAIGHT, J. This action was brought to recover damages for a personal injury. The defendants were contractors engaged in the construction of a large building known as the University Block in the city of Syracuse. The building was to be ten stories high, and at the time of the accident the walls were up between eight and nine stories. The building was bounded on the east by Warren street, on the north by Washington street, on the west by Bank alley and on the south by the Snow Building. The whole site was inclosed by a board fence from ten to fourteen feet high placed in the street outside of the curb line. To this inclosure there were four gates, one located in each corner, through

which entrance could be made to the building. There was a basement twelve feet deep below the ground floor. In the center of the building was a temporary elevator constructed from the basement up through the building, operated by a rope, which was used for the hoisting of iron, bricks, mortar, window frames, lumber and the like needed by the workmen above. The material used in the building was drawn in through the southeast gate, unloaded about the center of the building on the south side, the teams then passing out of the southwest gate into Bank alley. The material so drawn was taken from the wagon by wheelbarrows, carts and the like over temporary planks laid upon the joists to the elevator platform and then carried up on the elevator to the place where it was designed for use. The permanent floor had not yet been laid upon the ground floor over the basement, but through some portions of the building planks had been laid, over which the work was carried on. The plaintiff entered the employment of the defendants on a Friday at noon. He worked that afternoon, the next day and the following Monday with the masons up in the building. Monday night he quit work, and on the Saturday evening following, which was the 4th day of December, 1897, shortly after five o'clock he entered the building with a companion named James Shaw for the purpose of getting his pay. They entered at the southeast gate, passed through the building diagonally toward the center, then walked across the elevator platform which, at that time, was on a level with the ground floor, passed on to the north side of the building where the office was located and there the plaintiff received his pay. He then returned through the building, walking some five or six feet ahead of his companion until he reached the elevator shaft into which he walked, falling to the bottom of the basement and receiving the injuries for which this action is brought. He tells us that during the time he was at work the elevator platform mornings was at the ground floor and that he found it there each night when he came down the ladder from his work above. He further tells us that he had seen a number of persons cross over

the elevator when passing through the building when it was in place upon the ground floor, but that it was in almost constant use during the daytime in being loaded or unloaded or in carrying material to the upper floors of the building. There is some conflict in the testimony as to where the elevator was at the time of the accident. One of the plaintiff's witnesses testified that it had been run up to an upper floor and there blocked so as to enable the contractors to put in a new elevator platform during the intervening time between that and Monday morning. Other witnesses testified that it had been lowered into the basement. It is not apparent to us that this conflict affects the question which we have to determine either way, for it is conceded that the elevator was not on a level with the ground floor at the time of the plaintiff's fall. It is claimed on the part of the plaintiff that it was the custom to leave the elevator over night at the ground floor; while on the part of the defendants it was claimed that it was allowed to settle down into the basement and thus relieve the strain upon the ropes. We have not, however, in our examination of the evidence discovered any testimony which shows that the plaintiff knew of the existence of such a custom other than that which he saw when he entered the building in the morning and departed at night. It is further contended on behalf of the plaintiff that the temporary flooring of plank laid from the south side of the building to the elevator over which the material was carted with wheelbarrows, etc., was in better condition than in other places, and that it was the custom of the workmen to pass through upon these planks and to cross the elevator to the other side. It is conceded, however, by his witnesses that planks were laid to the west of the elevator shaft and that persons could pass through on the west without crossing the elevator, and that the man in charge of the elevator often warned people not to cross the platform. It is claimed further on the part of the plaintiff that at the time he passed through the elevator on his way to the office to get his pay there was a light and that on his return it was dark, and that he did not see the elevator hole, and yet it is

conceded by one of his witnesses that after he fell he saw him down in the elevator hole, and that he recognized a man there by the name of Fleming, who was assisting in picking him up. The office was outside of the building on the curb line, but inside of the fence, and could have been approached from the northwest gate without passing through the building, and most of the employees entered and departed through that gate. These are the substantial facts disclosed by the evidence. At the conclusion of the plaintiff's evidence, and again when the parties rested, the defendants moved for a nonsuit or for a direction of a verdict upon the ground that the defendants were not shown to have been negligent and that the plaintiff was shown to be guilty of contributory negligence. These motions were denied and exceptions were taken. At the time of the accident many of the employees in the building had ceased work for the day, but others were still at work.

We think the plaintiff was guilty of contributory negligence, and that the trial court erred in refusing the defendants' motions based upon that ground. Here was a large building in process of construction carefully guarded by a high fence surrounding it in the streets, shutting out the public and persons not employed or having business within. It was in an unfinished condition, having a temporary floor of planks over the basement and a temporary elevator for hoisting the material used in the construction of the building to the floors above. The plaintiff understood fully the condition of the floor and of the basement below, and that the elevator was in almost constant use. He knew that the elevator was liable to be moved from the ground floor to other places in the shaft, and that when it was so removed the hole in the elevator shaft would be open. He knew that crossing through this unfinished building after dark or in the twilight was dangerous and called for a vigorous use of his faculties to avoid danger. He knew perfectly where the elevator shaft was located, and we think, under the circumstances, he had no right to assume that the elevator was resting upon the ground floor and that he could cross in safety, and that by proceeding

on and walking into the hole in the manner in which he did he was negligent.

The judgment should be reversed and a new trial ordered, with costs to abide the event.

GRAY, LANDON, CULLEN and WERNER, JJ., concur; PARKER, Ch. J., taking no part; O'BRIEN, J., not voting.

Judgment reversed, etc.