(No. 46752

REX MUNDT, Appellant, v. RAGNAR BENSON, INC.,
*et al.*, Appellees.

*Opinion filed June 2, 1975.—Rehearing denied September 24, 1975.*

GOLDENHERSH, J., dissenting.

Horwitz, Anesi, Ozmon & Associates, Ltd., of Chicago (Nat P. Ozmon and Joseph Cerveny, of Chicago, and Dario A. Garibaldi, of Flossmoor, of counsel), for appellant.

William D. Maddux and Gary M. Elden, of Kirkland & Ellis, of Chicago, for appellee Ragnar Benson, Inc.

Richard F. Mack, of Chicago, for appellee Western Electric Co.

MR. JUSTICE WARD delivered the opinion of the court:

Rex Mundt, the plaintiff, was severely injured when he fell through an opening approximately five feet long and four feet wide on the fourth floor of a building owned by Western Electric Co., Inc. He brought a common law negligence action in the circuit court of Cook County against Western Electric Co., Bell Telephone Laboratories, Ragnar Benson, and Holabird and Root, architects.

The appellate court (18 Ill. App. 3d 758) summarized the complaint:

"*** [O]n December 20, 1965, plaintiff was engaged in construction work, in the employ of Corbetta Construction Company, at the premises of Western Electric located at Wheaton and Warrenville Roads in Du Page County, Illinois; that Ragnar Benson was the general contractor in charge and control of the construction being performed on said premises; that Holabird and Root were the architects in charge and control of said construction; that Western Electric was the owner of the premises; that all the named defendants were in charge and control of said construction; that plaintiff was in the exercise of due care and caution for his own safety; that the defendants, on the day in question, had the duty to maintain, operate, and control the construction work in a safe, suitable, and proper manner

so that plaintiff, while at work, would not be injured; that, notwithstanding the aforesaid duties, defendants were guilty of one or more of the following acts or omissions constituting negligence: (a) allowed work areas to be poorly lighted for night work; (b) failed to use due care in inspecting the condition of their premises; (c) failed to provide warnings or barricades around openings for workers on the premises; (d) failed to provide adequate lighting for night work; (e) failed to warn plaintiff of an existing unsafe condition; (f) failed to retain sufficient and proper control over the construction work; (g) failed to illuminate the work areas and openings in the floor at the construction site at night; and, finally, that as a direct result of defendants' negligence, plaintiff was caused severe injury when he fell through an opening from the fourth floor to the third floor at the building site. Plaintiff prayed for judgment in the amount of $150,000 against each of the named defendants, including Western Electric and Ragnar Benson." 18 Ill. App. 3d 758, 760-761.

Prior to trial, summary judgment was entered by the trial court in favor of Bell Telephone Laboratories, and at the close of the plaintiff's evidence the court entered directed verdicts for Western Electric, Ragnar Benson and Holabird and Root. The trial court denied a motion by the plaintiff to amend his complaint to include a count under the Structural Work Act (Ill. Rev. Stat. 1971, ch. 48, par. 60 *et seq.*). The appellate court affirmed (18 Ill. App. 3d 758), and we granted the plaintiff's petition for leave to appeal. The plaintiff did not appeal to the appellate court from the summary judgment order entered for Bell or from the directed verdict for Holabird and Root. Thus, Western Electric and Ragnar Benson are the only defendants in this appeal.

Western Electric contracted with Ragnar Benson, Inc., for that company to act as the management contractor for the construction of a building in Du Page County. Benson entered into a contract with Corbetta Construction Co. (Corbetta) whereby Corbetta agreed to perform all of the concrete work for the building. Corbetta would lay floors by pouring concrete in sections (bays) approximately 30 feet wide and 100 feet long. To form a section, plywood forms, 8 feet long, 4 feet wide and ¾ of an inch thick (8 x 4's), would be placed on top of vertical shoring so as to form a deck. Concrete was poured on top of the deck where it would harden and form a slab. If the plans called for an opening in the floor to accomodate, for example, an air duct, workers would form the opening by nailing four "four by fours" into a square bulkhead and then nailing the bulkhead to the top of the deck. In that way the concrete, when poured, would not enter the bulkhead, and an open area would be created. The bulkhead would then have an 8-foot by 4-foot plywood sheet laid across it and nailed to it to serve as a cover for the opening. The cover had a safety purpose. It was to prevent persons from falling into the opening. Between three and seven days after the concrete was poured, the plywood deck underneath the slab would be stripped or removed.

Corbetta had added cold weather procedures to prevent concrete from freezing. After finishers had leveled or smoothed the concrete on the deck, the concrete was covered with sisalkraft paper. This was made of heavy opaque material. The paper then would be covered with blankets which were held in place by plywood forms or other materials. Salamanders or heaters would also be set up to help prevent freezing.

Rex Mundt testified that he had worked on the Western Electric building as a laborer for Corbetta on the day shift from August to December 1965. During that time he poured concrete, stripped or removed decking and had seen carpenters building bulkheads. In December of

1965 he began working nights. He covered freshly poured concrete with paper, and placed blankets on the paper, then weighted down the blankets. He also saw that the salamanders were functioning properly and periodically checked the temperature of the concrete to insure it was adequately protected. Materials that the plaintiff would require to perform his work were usually stored by the day crew in the bay adjacent to the one he would work in.

He said that on December 20, 1965, he and Edward Malcolm, his helper, were working on a freshly poured bay on the floor of the fourth story. At about 8:30 p.m. they had covered all but 20 feet of the new concrete when they ran out of sisalkraft paper. Although strings of lights had been installed in the bay where they were working, he and his helper had been given also a floodlight and a flashlight for additional lighting. Taking the flashlight, the plaintiff walked about 40 feet from the bay where he was working to the bay north of his position where materials had been stored. There was no lighting in the north bay. Using his flashlight, the plaintiff saw a long strip of paper lying underneath an 8-foot by 4-foot sheet of plywood. He turned off the flashlight and began to attempt to lift the plywood sheet so as to free the strip of paper. The sheet proved to be a bulkhead cover, and, according to the evidence, it was nailed to the bulkhead. He said that it was very difficult to move but he did succeed in lifting it up about as high as his forehead. He then stepped forward and fell through the opening to the floor below.

On cross-examination the plaintiff acknowledged that he had seen the opening in question prior to the date of his falling and said that, in fact, he had probably papered it. He said that when laying paper on decks he had covered many openings with sisalkraft paper. The plaintiff testified he was aware that such openings were covered with plywood 8-foot by 4-foot sheets to prevent persons from falling through the openings. He said that when he turned off his flashlight it was so dark that he could not see his

hand in front of his face and that it would have been impossible for him to see what was underneath the plywood cover on the bulkhead.

Edward Malcolm testified that he was employed by Corbetta as a construction laborer on Western's building at the Bell Telephone Laboratories' site in August 1965. He said he had been working overtime with the plaintiff, on December 20, 1965, covering freshly poured concrete. They had run out of sisalkraft paper, and the plaintiff had gone to get more. Shortly after the plaintiff had walked to the north bay the witness heard a scream. He ran to the north bay and saw that the plaintiff had·fallen through an opening. He saw an 8-foot by 4-foot sheet next to the opening which evidently had been lifted by Mundt from the opening.

Herbert Johnson, the general superintendent of Ragnar Benson, was called by the plaintiff as an adverse witness under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, par. 60). He said that in addition to his duties of coordinating the activities of subcontractors and insuring that their work complied with architectural plans and specifications, he usually made daily inspections of the construction site and reported any hazardous conditions he observed to the subcontractors involved. He testified that on December 19, 1965, the day before the plaintiff was injured, he observed the opening that the plaintiff fell through. He said that an 8-foot by 4-foot sheet of plywood had been placed over the opening as a cover and that it had been nailed into the bulkhead which formed the sides of the opening.

The trial court did not err in directing the verdicts, as we consider the plaintiff as a matter of law was guilty of contributory negligence. This court in *Pedrick v. Peoria and Eastern R.R. Co.,* 37 Ill.2d 494, set out a single standard for determining not only the propriety of directed verdicts and judgments *n.o.v.* but for deciding as well whether negligence or contributory negligence is to be

considered a matter of law. The standard is whether "all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." (37 Ill. 494, 510; see *Hardware State Bank v. Cotner,* 55 Ill.2d 240, 246.) We judge that measuring by this standard no verdict here for the plaintiff could have stood.

There have been many holdings that one familiar with the location of an opening who falls through it under circumstances similar or comparable to those here is guilty of contributory negligence.

In *Browne v. Siegel, Cooper & Co.,* 191 Ill. 226, Alteman Lavigne was employed as a porter in the defendant's department store. These employees used a freight elevator which was operated by an employee named Bos. On the night in question the porters had finished their cleaning on the second floor and walked behind Bos as they entered the elevator room preparing to move to another floor. There was no light in the room or in the elevator shaft and Bos raised the wire gate or door at the shaft to see if the elevator was at that floor. As he leaned inside, Lavigne, who had been behind him, stepped into the open shaft and was killed. At trial it was shown that Lavigne knew the elevator might have been in use when Bos opened the gate to see where the elevator was. This court affirmed the trial court's direction to find for the defendant, though the defendant had been in violation of an ordinance relating to the safe operation of elevators. The court said:

"In the case at bar, the evidence of the plaintiff showed that Lavigne knew of all the conditions which gave rise to the risks or dangers in using the elevator as it was used, and the jury would not have been justified in finding, from the evidence, that he did not know. With this knowledge he not only continued in the service, but at the time of the accident, without waiting for his associates to

come into the elevator room who were to descend with him, and without waiting to ascertain whether the elevator was at the opening, or for Bos to get on the elevator first, as he had been accustomed, and without injury, he passed Bos, whose attention was absorbed in looking for the elevator, and stepped off into the elevator shaft. We are of the opinion that the jury must have found, from his prior knowledge, *** he was guilty of such negligence as materially contributed to the injury." 191 Ill. 226, 233-34.

Other cases holding that the plaintiff's knowledge of danger from an open elevator shaft precluded a recovery for falling on the ground of contributory negligence include: *Kennedy v. Friederich* (1901), 168 N.Y. 379, 61 N.E. 642; *Johnson v. Citizens National Bank* (1950), 152 Ohio St. 477, 90 N.E.2d 145; *Bridges v. Hillman* (1957), 249 Minn. 451, 82 N.W.2d 615.

In *Gardner v. Metropolitan Utilities District* (1938), 134 Neb. 163, 278 N.W. 137, the plaintiff fell through a trap door in her kitchen which a meter reader had left open. In reversing a judgment for the plaintiff, the Supreme Court of Nebraska said:

"The record reveals that [the trapdoor] was the usual way, continually and constantly used by her and her family, to pass to the basement. Her negligence in stepping into the darkened room, where she well knew that the floor was a trapdoor regularly opened upon the cellar steps, was more than slight negligence and defeated her recovery. She was not entitled to rely solely upon the belief that no one would leave it open. It was her duty to use the ordinary means at her disposal to ascertain whether it was open or closed. She knew of its dangers, and it was her duty to exercise

some care to avoid the hazard for her own safety.
* * *

In an almost identical case, *Swanson v.
[Peter] Schoenhofen Brewing Co.,* 215 Ill. App.
185, the court held: 'Entering a dark room where
a trapdoor leading into a cellar is liable to be
open, without using the means at hand to
ascertain whether the trapdoor is open or shut, is
negligence *per se.*' [In *Swanson* a] bartender, who
had worked in a saloon for two years and seven
months, fell into a cellar through a trapdoor in a
dark room adjoining the bar. The reasoning of
that case leads to the inevitable conclusion that
one who enters a darkened room containing a
trapdoor, as in this case, is negligent *per se.* There
are many other similar cases, as when one steps
through an elevator door and the elevator is not
there." *Gardner v. Metropolitan Utilities,* 134
Neb. 163, 165-66, 278 N.W. 137, 138; see
*Swanson v. Peter Schoenhofen Brewing Co.,* 215
Ill. App. 185, 188.

In *Brown v. Associated Operating Co.* (1915), 165
App. Div. 702, 151 N.Y.S. 531, *aff'd* (1917), 222 N.Y.
566, 118 N.E. 1053, a longshoreman brought suit for
injuries he received when he fell through a hatch on a ship.
The day before the accident the plaintiff had seen the
open hatch. The hatch was between decks, and when he
was injured the plaintiff had been walking in darkness on
the lower deck where the hatch was located. He walked
only a few feet when he fell through the hatch and was
injured. It was held that his walking in a darkened area was
negligence precluding his recovering in view of his know-
ledge of the hatch.

The court in *Ingram v. Lehigh Coal & Navigation Co.*
(1892), 148 Pa. 177, 23 A. 1001, affirmed a trial court's
directed verdict for a defendant on the ground the

plaintiff's conduct constituted contributory negligence as a matter of law. There the plaintiff, knowing of the presence of a hole in a floor, continued to walk across the floor after his lamp had been extinguished.

The plaintiff here was fully aware that there were potentially dangerous openings in the concrete work. He had poured concrete and removed the plywood decks at the job site for four months. After that, and for over a month prior to his injury, the plaintiff's job had been covering freshly poured concrete, and any openings formed, with sisalkraft paper. He testified that before the night in question he had seen the opening through which he fell and in fact had probably covered it with paper. Although it was completely dark in the north bay where he had gone for paper, he turned off his flashlight and in total darkness proceeded to lift the plywood cover which had been nailed to the bulkhead. Then, holding the cover before him, in complete darkness he stepped forward and into the opening. We must say the plaintiff was careless to an extreme degree, and using the standard this court set out in *Pedrick v. Peoria and Eastern R.R. Co.,* 37 Ill.2d 494, for determining contributory negligence as a matter of law, we hold the trial court did not err in directing a verdict in favor of the defendants.

Another contention of the plaintiff is that the trial court erred in denying his motion to amend his complaint to include a count under the Structural Work Act (Ill. Rev. Stat. 1971, ch. 48, pars. 60 through 69).

The complaint, which was filed in September 1966, charged the defendant with common law negligence. On June 9, 1971, the opening day of the trial, when the plaintiff moved to amend the complaint, the defense objected on the ground the amendment would introduce a different character of claim and theory into the case for which the defense was unprepared. They said their trial preparation had been on the basis of a common law negligence suit, that they prepared their defense solely on

the ground of contributory negligence, which they considered might not be a bar to recovery under the Structural Work Act. The defendants indicated that if the plaintiff's motion was allowed they would require a continuance for new preparations for trial. The trial court reserved ruling on the motion and at the close of the plaintiff's case denied the motion.

A trial court has broad discretion in motions to amend pleadings prior to the entry of final judgment, and the denial of a motion to amend will not be regarded as prejudicial error unless there has been a manifest abuse of such discretion. *Austin Liquor Mart, Inc. v. Department of Revenue,* 51 Ill.2d 1, 8; *Old Salem Chautauqua Association v. Illinois District Council of the Assembly of God,* 13 Ill.2d 258, 266; *Deasey v. City of Chicago,* 412 Ill. 151, 156.

Considering the circumstances of the motion, it cannot be said there was a manifest abuse of discretion in denying it. *Bowman v. County of Lake,* 29 Ill.2d 268, 281.

For the reasons given, the judgment of the appellate court is affirmed.

*Judgment affirmed.*

MR. JUSTICE GOLDENHERSH, dissenting:

I dissent. On this record the question of plaintiff's contributory negligence should have been submitted to the jury, and the circuit court erred in directing a verdict.

As stated in the majority opinion the concrete was poured on plywood decks. The testimony of Earl Hauge, labor foreman for plaintiff's employer, shows that when the concrete was poured it was covered with Sisalkraft paper and insulated blankets and that propane gas heaters were used to "keep heat underneath." The Sisalkraft paper, blankets and heat remained in place for at least three days. The curing process took a week and in most instances the deck was not "stripped" from beneath the

concrete until seven days had elapsed. The stripping was not done until after the blankets and Sisalkraft paper had been removed. The concrete in the bay where plaintiff fell had been poured only four days prior to the occurrence, the Sisalkraft paper had not been removed and plaintiff was entitled to assume that the decking was still in place. The testimony shows, too, that there was a great deal of paper, plywood and other materials lying around and there is no basis in the testimony for concluding that plaintiff should have known that the plywood covered an opening.

The majority cites the testimony of Herbert Johnson, superintendent for defendant Ragnar Benson, that the plywood had been placed over the opening and nailed to the bulkhead. A comparison of his testimony with that of plaintiff and Edward Albrecht, plaintiff's helper, would lead to the conclusion that they were not discussing the same opening. Johnson testified that there was no Sisalkraft paper under the plywood and that "the paper was taken off and the protecting blankets were taken off." Plaintiff testified that he moved the piece of plywood in order to get to a long strip of paper underneath it. Albrecht testified that after plaintiff fell he ran to the place where plaintiff had been, and saw the hole in the paper covering the opening through which plaintiff had fallen.

Johnson also stated that there were no "cleats" under the plywood and that it was nailed flush to the bulkhead with eight-penny nails. There is no testimony that plaintiff used a hammer or other tool to remove the nails and no one has attempted to explain how, if it were nailed, he could by hand, without tools, lift the plywood free of the bulkhead. Several witnesses saw the plywood the next morning but the record fails to show that any of them saw any nails.

The majority stresses the fact that plaintiff had seen the opening in question prior to the date of his fall, and that he had probably papered it. On that basis it cites as

authority for its position cases involving elevator shafts, a trap door in a kitchen and a hatch in a ship. None of these are in point. In this case there were numerous holes in numerous bays and if plaintiff had ever previously seen the hole through which he fell it was four days earlier when that bay was poured.

Contributory negligence is measured against the conduct of a reasonably careful person under circumstances similar to those shown by the evidence. This court has consistently held that entering into a hazardous area is not *per se* contributory negligence and that the presence of an apparent defective or hazardous condition is a circumstance to be considered in determining whether a plaintiff was contributorily negligent. See *Pauckner v. Wakem,* 231 Ill. 276; *Swenson v. City of Rockford,* 9 Ill.2d 122.

The record is replete with testimony which shows that the job. was inadequately lighted and that manholes and other openings were not properly barricaded or covered. The evidence shows that plaintiff and his helper were assigned the task of covering the newly-poured concrete and that the supply of materials provided for that purpose was inadequate. Plaintiff was not working in the serendipitous situation of a properly lighted, adequately protected construction job; he was confronted with the stern realities of going into a cold dark area to obtain the materials necessary to complete his work.

The fact that the area was dark, that plaintiff turned off his flashlight, and that he knew that there were openings provided in the deck were all circumstances to be considered by the jury, but it, and not the court, should have determined whether he was contributorily negligent. To demonstrate the wisdom of leaving for jury determination the question whether plaintiff was contributorily negligent I find particularly apposite the language of the Court of Appeals for the Fifth Circuit in *Keating v. Jones Development of Missouri, Inc.* (5th Cir. 1968), 398 F.2d 1011. In that case the district court had entered summary

164

judgment in an action for personal injuries suffered in a swimming pool owned by the defendant. The plaintiff had charged the defendant with negligence in failing to provide supervisory attendants and in failing to use proper safety equipment. In reversing the judgment the court said "Negligence is a seldom enclave for trial judge finality. Negligence is a composite of the experiences of the average man and is thus usually confined to jury evaluation. Swimming pool accidents provide no exception. Judges can claim no special competence to pass upon the safeguards appropriate to swimming pools. In fact, it is a safe assumption that they are used more by jurors than by judges. We therefore find that the district court erred in not granting the appellant a trial before his peers." 398 F.2d 1011, 1015.