ROBERT M. RAGAN, Plaintiff-Appellant, *v.* FOURCO GLASS CO. *et al.,* Defendants-Appellees.

First District (2nd Division)   No. 60711

Opinion filed March 15, 1977.

2

Morrill, Koutsky, Chuhak and Upton, of Chicago (Lawrence T. Stanner, of counsel), for appellant.

Kirkland & Ellis, of Chicago (Thomas G. Finn and James E. Dahl, of counsel), for appellees.

Mr. PRESIDING JUSTICE DOWNING delivered the opinion of the court:

Robert M. Ragan (hereafter plaintiff) brought an action against Fourco Glass Company and Rolland Glass Company (hereafter collectively referred to as defendant)[1] alleging negligence in connection with the loading of a truck shipment of crated glass.[2] The case was submitted to

---

[1] Rolland Glass Company was merged into Fourco Glass Company after plaintiff initiated this action.

[2] A trucking firm, Elmer G. Brake, Inc. was also charged with negligence. Evidence adduced at trial showed that this firm had merely transported a closed and sealed trailer without participating in its loading. At the close of plaintiff's case, a verdict was directed in favor of this defendant. No appeal was taken from that order.

the jury and a verdict in favor of plaintiff in the amount of $28,000 was returned. Thereafter, the trial court granted defendant's motion for judgment notwithstanding the verdict. Plaintiff appeals from that order.

The judgment notwithstanding the verdict was entered on May 31, 1974. Plaintiff timely filed his notice of appeal on June 13, 1974. Defendant subsequently moved the trial court to amend its order to conditionally grant defendant a new trial should the judgment notwithstanding the verdict be reversed on appeal. This motion was granted by the trial court on June 20, 1974. Plaintiff filed an amended notice of appeal, appealing also from the order conditionally granting a new trial.

Although the precise basis upon which the judgment notwithstanding the verdict was granted is not clear, counsel for both parties in their arguments have assumed it was plaintiff's alleged contributory negligence. We also make this assumption. This appeal raises the question of whether the trial court erred in granting the judgment notwithstanding the verdict because plaintiff was not contributorily negligent as a matter of law.

The relevant facts are as follows. At the time of the occurrence out of which this suit arose, plaintiff was a 19-year-old student employed on a part-time basis as a freight assembler by Midway Industries Incorporated (hereafter "Midway"). During the course of his 1½ years employment in that capacity, he was called upon from time to time to unload trucks which arrived at Midway. On November 29, 1968, a shipment of crated glass from defendant was transported to the Midway premises. The truck was backed down and into a loading dock located next to the Midway building. The dock area is constructed at an angle of approximately ten degrees sloping downward towards the building.

The glass was shipped in two different types of containers, "pallets" and "window glass boxes." The pallets were constructed from a framework made from 2 x 4 inch boards to which 1 x 6 inch slats were affixed. Inside this box type structure there would usually be about 200 sheets of glass. The size of a particular pallet would be determined by the dimensions of the glass which it was designed to store. The largest of these glass sheets were 46 x 54 inches. The pallets containing these large sheets were about 6½ feet long and 4 feet high. The width of the pallets ranged from 12 to 36 inches and the weight ranged from 1,000 to 2,000 pounds. The window glass boxes were substantially smaller than the pallets and weighed only about 100 pounds.

The shipment contained 18 pallets and 50 window glass boxes. Eight pallets were arranged in double file across the back of the truck. Behind these pallets, several more pallets were single stacked and between 25 to 30 boxes were arranged in rows across the width of the truck. The above mentioned pallets were braced with 2 x 4 inch boards which were nailed

onto either the bed or sides of the trailer. The window glass boxes were braced with another board which extended across the entire width of the truck. Behind the boxes, and on the right side as one looked into the truck from the rear, rested a 12- to 14-inch wide pallet which had been loaded onto the truck in an unusual manner. This pallet (which eventually fell on plaintiff) stood about halfway up the truck and perpendicular to the sides of the truck. It was not braced by 2 x 4 boards or in any other manner. Approximately 12 to 14 window glass boxes were located behind this pallet and other pallets were placed near the front of the truck. These latter pallets and boxes were braced in the usual manner.

Plaintiff testified that he reported for work shortly before 7:30 a.m. on November 29, 1968. He was instructed by his immediate supervisor, Glenn Calvert, to help Calvert unload the truck. Although plaintiff did have experience with other types of cargo, this was the first time he unloaded a glass shipment. Prior to beginning the task, plaintiff received certain warnings from Calvert. He was told to watch his hands and his feet and to be careful. The two men began unloading pallets and window glass boxes from the rear of the trailer. Upon removal of approximately 15 boxes, Calvert and plaintiff became aware of the unbraced pallet. Calvert again told plaintiff to be careful. Plaintiff was also warned to not bump the pallet. They continued unloading the boxes directly in front of the pallet. Calvert would lift one end of the box while plaintiff, with his back to the unbraced pallet, slid a dolly, or wooden platform on wheels, underneath it. The box would then be rolled off the truck.

They were engaged in the removal of the last box in front of the unbraced pallet when the accident occurred. The pallet fell towards plaintiff and the rear of the truck as he was working with his back to the pallet, one or two feet away from it. Somebody told plaintiff to move out of the way. He managed to take a few steps towards the rear of the truck, but the pallet caught his right ankle and pinned it to the floor of the truck.

On cross-examination, plaintiff stated that, due to the incline of the dock, one needed to walk uphill to proceed further into the truck. He was aware of the general tendency of objects to slide back towards the dock. Plaintiff further testified that the pallet could not have fallen without removal of the window glass boxes in front of it. Although he did not know the cause of the pallet tipping over, plaintiff did not think it was due to any vibration in the truck. Although it would have been possible to unload the freight in front of it, plaintiff stated it would probably not have prevented the accident. On redirect examination, plaintiff testified that neither he nor Calvert came in contact with the pallet before it fell.

Calvert also testified on behalf of plaintiff. On November 29, 1968, he was employed as a foreman by Midway and had 10 years of experience unloading trucks. Plaintiff worked under him and was directed to assist him in the unloading of a truck from defendant. Calvert and plaintiff were

the only persons engaged in the unloading operation and the only witnesses to the accident. While unloading the window glass boxes, Calvert became aware of the unbraced pallet. He told plaintiff to not hit the pallet because it might fall over and that, when they got to the pallet, more help would be needed to get it out. As they were removing a window glass box in front of the pallet, Calvert saw the pallet tipping and yelled for plaintiff to get out of the way. The witness further testified, on cross-examination, that he advised plaintiff to exercise caution, that the pallet was not braced and could fall over. On redirect examination, Calvert stated he did not know of anything that had hit the pallet and caused it to tip over.

Defendant rested without calling any witnesses.

## I.

■■ Defendant contends the trial court properly granted the judgment notwithstanding the verdict because plaintiff was contributorily negligent as a matter of law. The issue of contributory negligence is ordinarily a question of fact to be resolved by the jury. (*Jines v. Greyhound Corp.* (1965), 33 Ill. 2d 83, 210 N.E.2d 562.) In *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504, our supreme court enumerated the standard for determining whether negligence or contributory negligence is to be considered a matter of law. This standard, also used to determine the propriety of directed verdicts and judgments notwithstanding the verdict, is whether "all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." (37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14; see *Mundt v. Ragnar Benson, Inc.* (1975), 61 Ill. 2d 151, 157, 335 N.E.2d 10, 14.) From examination of the record we cannot agree that the evidence, viewed in its aspect most favorable to plaintiff, so overwhelmingly favors defendant as to justify overturning the jury's verdict.

Defendant argues that plaintiff voluntarily exposed himself to a known danger and disregarded safe methods of unloading the truck. Mere knowledge of a danger is not sufficient to base a finding of contributory negligence as a matter of law. The party who knew of the danger must also have failed to use reasonable precautionary measures to avoid the danger. *Hardware State Bank v. Cotner* (1973), 55 Ill. 2d 240, 302 N.E.2d 257.

The evidence, viewed in its aspect most favorable to plaintiff as required by *Pedrick*, does not support defendant's contention. Plaintiff was a 19-year-old part-time worker who had never before unloaded a glass shipment. He was working under the direction of an experienced supervisor, Calvert. Although defendant argues plaintiff received more extensive warnings, it can be reasonably inferred from the evidence that

plaintiff received only two warnings from Calvert. The first, given prior to beginning the unloading operation, was a general warning to exercise caution. The other warning, stated when the pallet was discovered unbraced, was to avoid contact with the pallet. Although plaintiff knew that the pallet was not secured in the usual manner, it can be further reasonably inferred that plaintiff was unaware of the possibility of the pallet tipping without contact. Both plaintiff and Calvert deny they touched the pallet in any manner prior to the accident.

Plaintiff admitted on cross-examination that the pallet could not have fallen without removal of the window glass boxes in front of it. It is unclear from the record whether these boxes were loaded leaning up against the pallet or with a short gap between them. Assuming plaintiff is correct in his statement, this is knowledge by hindsight. Nowhere in the record is there evidence that plaintiff knew of the danger of withdrawing support for the pallet prior to removing the box. Thus it cannot be said, as a matter of law, that plaintiff voluntarily exposed himself to a known danger.

■■ Furthermore, whether plaintiff failed to use reasonable precautionary measures to avoid the danger is also uncertain from the evidence. Defendant argued at trial, and on this appeal, that plaintiff disregarded simple and safe methods of removing the cargo, such as leaning the pallet against the side of the truck or bracing the pallet with a bar or 2 x 4 board. Plaintiff denied on cross-examination that other methods of removal would have prevented the injury. Furthermore, plaintiff was working under the direction of his foreman and may not have been able to implement an alternate method of unloading the truck. The jury rejected defendant's speculation about possible ways to avoid the danger it created. We do not believe this determination of fact, appropriately made by the jury, should be overturned.

The case at bar compares favorably with *Wintersteen v. National Cooperage & Woodenware Co.* (1935), 361 Ill. 95, 197 N.E. 578. In that case plaintiff, inexperienced in opening freight cars and ignorant of the attending danger, was called upon to help open a freight car which had been loaded with barrels by defendant. The car door was unusually difficult to move. Plaintiff, his supervisor, and another employee pulled and shoved the door until it opened. Instantly, a barrel fell out and struck plaintiff. Although all of the barrels had been braced by wooden boards before the door was closed, one of the braces had broken during the transit. The jury awarded plaintiff $18,200 plus costs, and judgment was entered thereon. The court affirmed and ruled the question of plaintiff's contributory negligence was for the jury to decide:

> "No hard and fast rule can be laid down as to what a person should do for his own safety in the great variety and diversity of situations of danger which now constantly arise, but ordinarily what is due

care or what would be the conduct of the every-day reasonably prudent man for his own protection under a like situation is a question of fact which must be left to the determination of the jury." 361 Ill. 95, 104, 197 N.E. 578, 583.

The cases cited by defendant are inapposite. In both *Illinois Central R.R. Co. v. Oswald* (1930), 338 Ill. 270, 170 N.E. 247, and *Fore v. Vermeer Manufacturing Co.* (3d Dist. 1972), 7 Ill. App. 3d 346, 287 N.E.2d 526, the injured plaintiff was admittedly aware of the danger attending his or her course of conduct. *Day v. Barber-Colman Co.* (2nd Dist. 1956), 10 Ill. App. 2d 494, 135 N.E.2d 231, involved an experienced mechanic injured while installing an overhead vertical door. The mechanic knew of the danger and the means to avoid such danger, but chose to not take available precautionary measures before proceeding. In *Reid v. Employers Mutual Liability Insurance Co.* (5th Dist. 1973), 14 Ill. App. 3d 174, 302 N.E.2d 108, *aff'd on other grounds* (1974), 59 Ill. 2d 194, 319 N.E.2d 769, a workman who sustained injuries during the operation of a printing press was also found to have been contributorily negligent as a matter of law. The workman clearly had a safer method available for cleaning the presses, which for no particular reason, he chose not to use.

*Mundt v. Ragnar Benson, Inc.* (1975), 61 Ill. 2d 151, 335 N.E.2d 10, is also distinguishable. In that case a laborer who fell through an opening in a recently poured concrete floor was held to have been contributorily negligent as a matter of law. In so holding, this court stated:

"The plaintiff here was fully aware that there were potentially dangerous openings in the concrete work. He had poured concrete and removed the plywood decks at the job site for four months. After that, and for over a month prior to his injury, the plaintiff's job had been covering freshly poured concrete, and any openings formed, with sisalkraft paper. He testified that before the night in question he had seen the opening through which he fell and in fact had probably covered it with paper. Although it was completely dark in the north bay where he had gone for paper, he turned off his flashlight and in total darkness proceeded to lift the plywood cover which had been nailed to the bulkhead. Then, holding the cover before him, in complete darkness he stepped forward and into the opening. We must say the plaintiff was careless to an extreme degree, and using the standard this court set out in *Pedrick v. Peoria and Eastern R.R. Co.*, 37 Ill. 2d 494, for determining contributory negligence as a matter of law, we hold the trial court did not err in directing a verdict in favor of the defendants." 61 Ill. 2d 151, 160, 335 N.E.2d 10, 15.

Plaintiff in the case at bar was inexperienced in the unloading of glass shipments and was working under the direction of his experienced supervisor. He did not admit he knew that the manner employed for

unloading was dangerous. The evidence does not conclusively demonstrate a safer method available, or that plaintiff was in a position to utilize such a method. We cannot say plaintiff was careless to an extreme degree.

■■ The evidence, viewed in its aspect most favorable to plaintiff as required by *Pedrick*, does not so overwhelmingly favor defendant that the verdict cannot stand. Thus, the trial court erred in granting defendant's motion for judgment notwithstanding the verdict.

## II.

■■■ Defendant concedes the trial court did not have jurisdiction to amend its order to conditionally grant a new trial should the judgment notwithstanding the verdict be reversed on appeal. The order of the trial court entered May 31, 1974, granted defendant's motion for judgment notwithstanding the verdict. It did not grant a conditional new trial. On June 20, 1974, seven days after plaintiff timely filed his notice of appeal and proof of service of notice of appeal, the trial court entered its amended order.

The jurisdiction of the appellate court attaches instanter upon the filing of a proper notice of appeal and the circuit court is thereupon deprived of jurisdiction. (*People ex rel. Doty v. Dusher* (1962), 24 Ill. 2d 309, 181 N.E.2d 166.) The June 20, 1974, order is void and of no effect.

For the reasons stated above, we hereby order the judgment notwithstanding the verdict reversed and the cause remanded with directions to reinstate the verdict.

Reversed and remanded with directions.

STAMOS and PERLIN*, JJ., concur.

---

* At the time of oral argument of this case Justice John C. Hayes sat with Justices Downing and Stamos. Subsequently Justice Hayes died. Since that time Justice Perlin was designated the third member of the panel and has listened to the tape of the oral argument, has read the briefs and excerpts from the record.