(No. 70669.—

KEVIN WINTER *et al.*, Appellant, v. HENRY SERVICE COMPANY *et al.* (Henry Service Company, Appellee).

*Opinion filed May 20, 1991.*

290

CALVO and HEIPLE, JJ., took no part.

Anthony C. Raccuglia & Associates, of Peru (Cynthia M. Raccuglia, of counsel), for appellants.

Bozeman, Neighbour, Patton & Noe, of Moline (John V. Patton, of counsel), for appellee.

JUSTICE CLARK delivered the opinion of the court:

On July 24, 1981, plaintiff, Kevin Winter, filed a complaint against defendant Henry Service Company (Henry) and defendant Mayrath Industries, Inc. (May-

rath), seeking to recover damages for personal injuries Kevin suffered when his hand was caught in a Mayrath bottom drive auger. After nearly eight years of discovery and a mistrial, on June 23, 1989, both defendants filed motions for leave to file a third-party complaint for contribution against Wilhelm Winter, Kevin's father. The trial court denied defendants' motions, and the case proceeded to trial. Subsequently, Henry was found 25% liable for Kevin's injury. The jury did not find any fault on the part of Mayrath.

Henry appealed the trial court's refusal to grant its motion for leave to file a third-party complaint for contribution against Wilhelm Winter. The appellate court, with one judge dissenting, held that the trial court abused its discretion in refusing to allow Henry to file its third-party complaint for contribution. (199 Ill. App. 3d 1044.) We granted plaintiffs' motion for leave to appeal (134 Ill. 2d R. 315). We now reverse the appellate court decision and affirm the trial court.

On October 30, 1979, Kevin lost his right hand when it became entangled in the intake end of a bottom drive auger he was using to unload corn on his father's farm. The auger had been manufactured by Mayrath, and sold by Henry to Wilhelm Winter in September 1976. Kevin filed a complaint on July 24, 1981, against Mayrath and Henry based upon negligence and product liability theories.

As part of discovery, depositions of Kevin and Wilhelm Winter were taken on January 26, 1986, and September 29, 1986, respectively. According to both Kevin and Wilhelm, the bottom drive auger was delivered to Wilhelm's farm in September 1976 by Arlo Morey, a salesman for Henry. In his deposition, Kevin stated that his father, Wilhelm, and his brother, Rodney, were present when the auger was delivered, and that Wilhelm and Rodney had a conversation with Morey re-

garding the lack of a protective guard over the intake end of the auger. Kevin testified that Morey told Wilhelm and Rodney that a protective guard was not available, nor was one needed for the auger.

At his deposition, Wilhelm testified that he was uncertain as to whether he was present when the bottom drive auger was delivered. However, he stated that shortly after the auger was delivered, he spoke with Morey regarding the need for a protective shield over the drive shaft on the bottom of the auger. According to Wilhelm, Morey stated that a protective shield was not available and, regardless, Wilhelm would not want one. Wilhelm further testified that Rodney was present for this conversation with Morey concerning the absence of a shield or guard.

Rodney Winter was not deposed by the defendants, and the case proceeded to trial on April 18, 1989. At trial, Rodney testified that he was not present when the auger was delivered to his father's farm. He stated that when he first observed the auger, he thought it was unusual that it did not have a screen guard over the auger screw on the intake end, and that he had suggested to his father that they obtain a protective screen. Rodney stated that he believed the purpose of the protective screen was to keep hands and feet out of the intake end. The trial ended in a mistrial upon Mayrath's motion.

Subsequently, in light of Rodney's testimony at trial, the defendants deposed Rodney on June 7, 1989. In his deposition, Rodney reiterated that he was not present when the auger was delivered, nor was he present for any conversation between his father and Morey. Rodney testified that he had told his father to obtain a protective guard for the auger screw on the intake end, and that his father had, in fact, spoken to Morey regarding the acquisition of a guard. According to Rodney, Morey told Wilhelm that a guard was not available, and that

Wilhelm would not want one because it would plug up the auger and it would not feed properly. Rodney then told his father that, regardless of Morey's advice, they should obtain a protective guard.

Based on Rodney's deposition testimony, on June 23, 1989, the two defendants filed motions for leave to file third-party complaints for contribution against Wilhelm, alleging that Wilhelm had negligently used the auger without a screen over the intake end. The trial court denied these motions, and the case proceeded to trial on July 26, 1989. At the conclusion of the second trial, the jury returned a verdict finding Henry 25% at fault for Kevin's injury. The jury did not find any fault on the part of Mayrath.

Section 2—406(b) of the Code of Civil Procedure provides:

> "Within the time for filing his or her answer or thereafter by leave of court, a defendant may by third-party complaint bring in as a defendant a person not a party to the action who is or may be liable to him or her for all or part of the plaintiff's claim against him or her." (Ill. Rev. Stat. 1989, ch. 110, par. 2—406(b).)

In addition, section 2—616(a) of the Code of Civil Procedure provides that any time before final judgment, amendments may be allowed on just and reasonable terms, introducing any party who ought to have been joined as a plaintiff or defendant. Ill. Rev. Stat. 1989, ch. 110, par. 2—616(a).

The question of allowing a third-party complaint for contribution is clearly addressed to the broad discretion of the trial court. (Ill. Rev. Stat. 1989, ch. 110, par. 2—406(b); see *Roberts v. City of Chicago* (1982), 105 Ill. App. 3d 383, 384-85; *Hastings v. Abernathy Taxi Association, Inc.* (1973), 16 Ill. App. 3d 671, 676; *Stahelin v. Board of Education* (1967), 87 Ill. App. 2d 28, 46.) The denial of a motion to file a third-party complaint will not

be regarded as error absent a manifest abuse of discretion. See *Mundt v. Ragnar Benson, Inc.* (1975), 61 Ill. 2d 151, 161.

Henry argues that the trial court abused its discretion in refusing to allow it to file a third-party complaint for contribution against Wilhelm. Henry argues that Rodney's testimony at the first trial, in which he stated that he was not present during the conversation between Wilhelm and Morey and that he had told Wilhelm to obtain a protective guard for the auger, was a complete surprise. Henry claims that because of the close family relationship between Wilhelm, Kevin, and Rodney, it could not have anticipated Rodney would not conform his testimony to Wilhelm's and Kevin's. Further, once it heard this testimony which contradicted the testimonies of Wilhelm and Kevin, Henry claims that it promptly filed its motion to add Wilhelm as third-party defendant. Thus, the trial court should have allowed its motion.

We disagree. Although the test of whether the trial court exercised sound discretion with respect to the allowance of amendments to pleadings is whether its decision "furthers the ends of justice" (*Bowman v. County of Lake* (1963), 29 Ill. 2d 268, 281), we do not believe that justice mandates that Henry be allowed to file a third-party complaint against Wilhelm. First, we note that Henry certainly did not act in a timely fashion in filing its third-party complaint. In 1981, Kevin filed his complaint against Henry and Mayrath. In 1986, the depositions of Kevin and Wilhelm were taken, and both men testified that Rodney was present during a conversation in which Morey told Wilhelm that a protective guard was not available or needed for the bottom drive auger.

Thus, in 1986, Henry was on notice that Rodney was a participant in an important conversation regarding the availability of a protective guard for the auger. This con-

versation was an integral part of the plaintiff's case against Henry. Notwithstanding the close family relationship, common sense would dictate that Henry should depose the two plaintiff witnesses who were present for this conversation. Yet, Henry refused to depose Rodney, explaining that the additional expense was not justified in an already expensive lawsuit. Henry then waited three years until the beginning of the first trial to see if Rodney's testimony would correspond to that of Kevin's and Wilhelm's. As stated in the dissenting opinion below:

> "The essential facts regarding Rodney's involvement were available to Henry no later than 1986, yet no effort was made to depose him prior to April 18, 1989. Such inattentiveness on Henry's part cannot be attributed to 'surprise' testimony on the date of trial." 199 Ill. App. 3d at 1049 (Heiple, P.J., dissenting).

Since Henry has yet to adequately demonstrate an inability to obtain Rodney's testimony at an earlier date, we believe that the trial court ruled correctly when it denied Henry's motion to file a third-party complaint. Henry's failure to depose Rodney prior to trial was a result of its own "inattentiveness" and miscalculations, and its motion would have prolonged this cause of action, which was already in its eighth year.

Further, we believe that Henry's claim for contribution was essentially at issue in 1986, and Henry's failure to assert it then cannot be attributed to the "surprising" testimony of Rodney in 1989. Although Rodney's testimony at the first trial and at his deposition taken June 7, 1989, contradicted Kevin's and Wilhelm's assertions that Rodney was present for the conversation between Wilhelm and Morey, Rodney never stated that he had told his father that protective guards were, in fact, available for their bottom drive auger. Rather, he told his father that he ought to obtain a guard for the auger be-

cause it would be dangerous to operate without a protective guard. Rodney's testimony, thus, conformed to Wilhelm's deposition testimony in 1986, in which he stated that he thought the auger was hazardous without a protective device. Since Henry's claim for contribution against Wilhelm essentially is based on Wilhelm's negligent use of the auger without a protective guard, and this was at issue in 1986, we believe that Henry had a previous opportunity to file its third-party complaint for contribution. Therefore, we do not think the trial court abused its discretion in denying Henry's motion.

Accordingly, we reverse the decision of the appellate court, and affirm the decision of the trial court.

*Appellate court reversed;*
*circuit court affirmed.*

JUSTICES CALVO and HEIPLE took no part in the consideration or decision of this case.